**UNITED STATES of America, Appellee,**

v.

**Charles POOLE, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Stephen Clayton UPCHURCH, Appellant.**

**Nos. 82–5105, 82–5107.**

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1983.

Decided Oct. 11, 1983.

Rehearing and Rehearing En Banc
Denied Nov. 23, 1983.

Michael J. Thompson, Columbia, S.C. (Thompson, Baity & Savitz, P.A., Columbia, S.C., Arthur G. Howe, Uricchio, Howe & Krell, P.A., Charleston, S.C., on brief), for appellant.

Eric William Ruschky, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges, and BULLOCK,* District Judge.

HALL, Circuit Judge:

Stephen Clayton Upchurch (Upchurch) and Charles Brian Poole (Poole) appeal from their convictions, following a bench trial, of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 and possession with intent to distribute marijuana and aiding and abetting in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Finding no error, we affirm.

I.

On the night of June 3, 1980, Lexington County Sheriff's Office Investigator Thom-

---

* Honorable Frank W. Bullock, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

as E. Clark (Clark) received information from the Lexington radio dispatcher that a plane carrying approximately 300 pounds of marijuana had landed in nearby Kershaw County, South Carolina, and that before law enforcement officers had arrived, the marijuana had been removed from the scene by vehicle.

After receiving this information, Clark, who had at least twenty years' experience in law enforcement, including eleven years in narcotics investigations, proceeded to Poole's residence at 4523 Meadowood Road in Forest Acres in Richland County, South Carolina. Poole was under investigation at that time for trafficking in marijuana.

At approximately 11:00 p.m., Clark arrived in the vicinity of Poole's residence. Keeping the house under surveillance, Clark parked several houses away from the Poole residence. Twenty to thirty minutes later, the lights at the house went out. Shortly thereafter, a car drove into the Poole driveway and turned off its lights. With its lights still out, the car backed out into Meadowood Road and then backed into the Poole driveway so that its trunk was adjacent to the trunk of Poole's car. Clark then approached Poole's residence on foot. He stopped behind the hedge along Poole's property line. From this location, Clark observed two figures, saw the trunk lids of the cars come up, heard conversation, saw something moved from one car to the other, and then heard a trunk close.

Clark returned to his parked vehicle and observed a car leaving Poole's residence. He followed the car for a number of blocks and then stopped it.

After approaching the car, Clark asked the driver for his license which identified him as the appellant Upchurch. Clark stated he was investigating narcotics trafficking and told Upchurch he was under investigation. Clark advised Upchurch of his constitutional rights but did not arrest him. Clark told Upchurch that he wanted to look in the trunk, to which Upchurch responded that it was not his car. Clark explained

that Upchurch could nevertheless permit the search and that if he did not, "a search warrant could possibly be obtained." Clark asked Upchurch where the keys were, and Upchurch said, "Here they are," as he held them in his hand. Upchurch did not try to hold them back. Clark took them and opened the trunk. Clark found a thick coat of marijuana residue across the entire floor of the trunk. Clark then arrested Upchurch and transported him to the Forest Acres Police Station.

While at the police station, Clark applied to a magistrate for a search warrant and prepared an affidavit in support thereof. Finding that probable cause existed, the magistrate issued a warrant to search the Poole residence at 4523 Meadowood Drive, including any automobile, or outbuildings located on the premises.

Clark, accompanied by other officers, returned to the Poole residence with the warrant. Poole came to the door and was advised of the warrant. He told the officers that what they were looking for was in his car. Two bales of marijuana were found in the trunk of Poole's car.

On July 15, 1981, Upchurch and Poole were charged in a two-count indictment with conspiracy and possession of, with intent to distribute, approximately 100 pounds of marijuana.[1] Upchurch and Poole moved to suppress the evidence found in the searches. The district court denied the motions and found Upchurch and Poole guilty. This appeal followed.

II.

On appeal, Upchurch contends that the stop and search of the car which he was driving were unlawful. In particular, Upchurch argues that reasonable grounds for an investigatory stop did not exist and that Clark exceeded the brevity requirements for a stop and transformed the stop into an arrest without probable cause. Upchurch further argues that he did not consent to the search and that even if he did, his

---

1. Upchurch was originally indicted as Jerome Upchurch by mistake. On August 6, 1981, a superseding indictment was returned to correct Upchurch's name.

consent was tainted by either an illegal stop or arrest. We do not agree.

■ A law enforcement official may stop a moving vehicle without a warrant and for less than probable cause if, from all of the circumstances, he has an articulable, reasonable suspicion based upon objective facts, together with rational inferences therefrom, that either the vehicle or any of its occupants is engaged in criminal activity. *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *United States v. Mobley,* 699 F.2d 172, 174–175 (4th Cir.1983).

■ On June 3, 1980, when Clark stopped the car that Upchurch was driving, he knew that (1) Poole had been under investigation for trafficking in marijuana since May, 1980; (2) a plane carrying 300 pounds of marijuana had landed in nearby Kershaw County that evening; (3) the marijuana had been removed from the scene by vehicle before law enforcement officials arrived; (4) a car pulled into Poole's driveway around 11:30 p.m. that evening, turned off its lights, backed out of the driveway with its lights still off, and then backed in the driveway so that the trunk of the car was adjacent to the trunk of Poole's car; and (5) there were two persons who engaged in conversation, opened the trunk lids of the cars, and moved something from one car to the other.

From all of the circumstances, we find that the facts known by Clark at the time were sufficiently articulable to give rise to a reasonable suspicion that the car Upchurch was driving was engaged in marijuana trafficking so as to justify an investigative stop.

■ Although Upchurch concedes that only "several minutes went by during the stop," he next argues that the stop was not brief. We recognize that there are cases where the length of the detention has transformed the stop into an illegal arrest. *E.g., United States v. Perez-Esparza,* 609 F.2d 1284 (9th Cir.1979). However, this is not such a case.[2] We conclude that under all of the circumstances, Upchurch's detention was reasonable and the stop was lawful.

■ Once an investigative stop has been completed "any further detention or search must be based on consent or probable cause." *United States v. Brignoni-Ponce,* 422 U.S. 873, 882, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). The question of whether a consent to a search is voluntary is one of fact to be determined from all of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). Based upon all of the facts in this case, we cannot say that the district court's finding of consent is clearly erroneous. Nor was the consent tainted or coerced, because Upchurch was not arrested until after the search.

■ Even if Upchurch did not consent to the search, we conclude that the warrantless search of the trunk of the car that Upchurch was driving was lawful. In *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court held that police officers "who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it . . . may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant." *Id.* at 2159.

Here, Clark had probable cause to believe that contraband was concealed in the trunk of the car driven by Upchurch. While sur-

---

**2.** In *United States v. Place,* —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court expressly "decline[d] to adopt any outside time limitation for a permissible . . . stop." *Id.* at ——, 103 S.Ct. at 2646. The Court noted that "[s]uch a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any par-

ticular situation." *Id.* at n. 10. As the Court explained, whether the police diligently pursued their investigation is to be taken into account in assessing the effect of the length of the detention. *Id.* at ——, 103 S.Ct. at 2645–46. Upchurch does not contend that Clark was dilatory.

veilling Poole's residence at night, Clark saw something being moved from the trunk of one car to the other. On similar facts, the Fifth Circuit concluded in *United States v. Rivera,* 684 F.2d 308 (5th Cir.1982), that the warrantless search of the trunks of vehicles and the bed of a pickup truck was lawful under *Ross.* Accordingly, we conclude that the district court correctly denied Upchurch's motion to suppress the evidence found in the search of the car that he was driving.

### III.

Poole argues that the search of his car was unlawful because the warrant was defective.[3] He further contends that where the police obtain a warrant, which is later invalidated, the government may not rely on prior existing exigencies to support the search. Finally, Poole maintains that a federal court may not cure a defective state search warrant by adopting a "good faith" exception to the state constitution.[4]

We hold that any defects in the warrant are irrelevant and that exigent circumstances justified the warrantless search of Poole's car. As soon as Clark found the marijuana residue in the trunk of the car that Upchurch was driving, he would have been well within the law had he gone and immediately searched Poole's car. Any reasonable person, having Clark's discovery of marijuana and observations of the activities outside of Poole's residence, would have concluded that the marijuana had been transferred from Upchurch's car to Poole's car. The fact that Clark first went to the Forest Acres Police Station did not take away his right to search Poole's car without a warrant.

 By the time Clark discovered the marijuana residue, he could not know whether the suspected contraband had been moved into Poole's house or not. Moreover, Clark had arrested Upchurch. The exigency of the situation as it relates to Poole's automobile is not vitiated by Clark's decision to go to the Forest Acres Police Station, to place Upchurch in the custody of others, and to seek a search warrant with which he could search not only the Poole car but also the house. We, therefore, conclude that no search warrant was necessary to search Poole's car. Since no warrant was required, any defects in the warrant that was obtained cannot serve as a basis upon which to suppress the two bales of marijuana found in the trunk of Poole's car. Thus, the district court correctly denied Poole's motion to suppress the evidence found in the search of his car.

### IV.

Appellants' remaining contention that the district court abused its discretion in denying their motion to view the scene lacks merit. Accordingly, Upchurch's and Poole's convictions are affirmed.

AFFIRMED.

JAMES DICKSON PHILLIPS, Circuit Judge, concurring and dissenting:

I concur in that portion of the majority opinion which affirms the Upchurch conviction. I dissent from that portion which affirms the Poole conviction. I believe the evidence seized from the trunk of Poole's automobile was the product of an unconstitutional search and seizure and should have been suppressed.

My reasons can be summarized very briefly. The majority concedes the warrant was fatally defective, so that it did not authorize the search. With commendable candor the government has conceded on this appeal that the Poole search and seizure is most properly, and possibly only, defensible by the adoption and application of a "good

---

3. The government conceded below that the warrant was invalid because Clark's supporting affidavit did not set forth the timeliness of the events described in the affidavit.

4. The government urges us to adopt a "good-faith" exception to the exclusionary rule. The Supreme Court considered but did not decide that issue in the recent case of *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We also decline to address that issue in this case.

faith" exception to the exclusionary rule. I agree with the majority that we should not adopt such a rule in this case (though we possibly differ as to the reasons).

That leaves only the exigent circumstances exception to the warrant requirement—specifically the special application of that general principle embodied in the "automobile exception." And that exception—if we are faithfully to apply it—simply does not fit here, even under its recently expanded and clarified scope in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

There is no doubt that the probable cause element of the exigency exception existed here. Probable cause abounded, either to support the issuance of a warrant or to support a warrantless search if exigency then demanded it. The majority opinion easily demonstrates the existence of probable cause, but essentially then rests decision upon that element alone.

But here there was no exigency, in conjunction with probable cause, to support a warrantless search. That there was no exigency (any special considerations attaching to automobiles momentarily aside) is shown most clearly by the fact that the searching officer considered there was none. He went dutifully—taking the time required and accepting whatever risks might have been assumed to arise from the lapse of time and the lack of surveillance during his absence—to procure a warrant. He returned to execute a warrant, not to conduct a warrantless search that he then properly deemed to be reasonable because of exigency manifest in the circumstances. Any exigency justifying this search and seizure must be one reconstructed post-hoc by an officer who could not conceivably have acted upon any notion that exigency existed at the critical time.

Reserving the difficult conceptual question whether exigencies objectively present but not subjectively acted upon at the time of a search may ever be drawn upon after the fact to validate a search not otherwise valid, it is obvious that here no exigency existed in either sense—unless it be found in the special quality of the automobile as the target of search. I believe it cannot be.

*United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) has not broadened the automobile exception to the point that an automobile may be searched without a valid warrant in all its parts and under any circumstances simply because it is an automobile. *See Ross,* 456 U.S. at 800, 804–09, 102 S.Ct. at 2160, 2162–65 (upholding a warrantless search of vehicle stopped on the highway by police who had probable cause to believe vehicle was transporting contraband); *see also Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971) ("The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."). Practical considerations of the automobile's ubiquity in our society, of its high degree of mobility, and of the way in which persons in contemporary society commonly view its low level of "privacy" define the present, recently expanded contours of the automobile exception. But limits on the "exception" remain. Generally diminished privacy expectations while an automobile is in use on public ways are justifiably heightened once the automobile comes off public ways into the residential driveway or garage. Mobility—the hallmark of the special exigency associated with the vehicle—becomes less inherently an aspect of its nature when it is parked within the residential curtilage. Cases recognizing the importance of the vehicle's location—whether on public ways or on private residential property—*see United States v. Bradshaw,* 490 F.2d 1097 (4th Cir. 1974), have not been displaced by any new charter emanating from *Ross.*[1]

---

**1.** The sole question addressed in *Ross* was "the extent to which police officers—who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it—may con-

duct a probing search of compartments and containers within the vehicle whose contents are not in plain view." 456 U.S. at 800, 102 S.Ct. at 2159. The *Ross* Court's reliance on and extensive discussion of *Carroll v. United*

In this circuit, *Bradshaw* remains the law and continues to extend general fourth amendment protections to the automobile, no matter how much the target of suspicion, so long as it sits at rest on private residential property of its owner—at least until its departure from those premises appears imminent. *Id.* at 1103–04. That was essentially the factual situation presented to the officer here: an automobile, rightly under suspicion, but at rest and not manifestly on the brink of departure, on its owner's residential premises. Under our precedents I am satisfied that if this case were looked at solely as an "automobile exception" case, this search would not be upheld.

I suspect that what has lured the majority into an encroachment on fourth amendment core protections of the home and curtilage is the unfortunate aspect of the invalid warrant. This case affords a prime example of police and magistrate "good faith" error in procuring and issuing a warrant whose "technical" invalidity is then seized upon to challenge the search. In consequence, it is a case quintessentially made for the sort of "good faith exception" that some think is now needed and constitutionally justified to curb excessive protections being accorded criminals such as Poole by application of the exclusionary rule. The government in this case—as earlier indicated—has candidly conceded in oral argument that in its view this is the most defensible basis for upholding the Poole search.

I think we should forthrightly face up to this as the only possible basis for holding this a valid search. The government has formally urged this course upon us. Squarely considering it, I would decline to uphold the search on this basis.

I do not now see how a "good faith exception"—even if confined narrowly to a very few circumstances such as "technically" invalid warrants, *see Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2339,

*States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), makes clear that *Ross* was essentially concerned with the problem created by "auto-

76 L.Ed.2d 527 (1983) (White, J., concurring)—is compatible with and adequately protective of the genius of the fourth amendment. If such a means were made readily available to validate improper warrants, I am satisfied that its effect over time would be completely to eviscerate the general *in terrorem* effect of the designedly rigorous warrant requirements. Most "bad" warrants must result from "good faith" bumbling under the interpretation I am persuaded would be given to "good faith" in this context. Human nature and the incessant pressures to avoid undue protection of criminals—particularly those now engaged in the drug traffic that ravages our society, *see Turner v. United States,* 396 U.S. 398, 426–27, 90 S.Ct. 642, 657–58, 24 L.Ed.2d 610 (1969) (Black, J., dissenting)—would, I fear, inevitably lead to that result.

I would not uphold the search here by adopting in this circuit a good faith exception, as the government—essentially resting its case on our willingness to do so—has urged that we do. Because the search was not otherwise justified by warrant or any recognized exception to the warrant requirement, I would hold it invalid.

mobiles in transit," 456 U.S. at 806, 102 S.Ct. at 2163.