FRANK, Judge.
The state appeals from the trial court’s order granting Chapel’s motion to suppress evidence. We reverse.
Chapel was charged in an information with violating section 790.01, Florida Statutes (1985), by carrying a concealed handgun on or about his person. Chapel moved to suppress the firearms seized from his car alleging that they were the product of a warrantless search and were obtained as a consequence of his illegal detention.
The search of Chapel’s car and seizure of the weapons grew out of the following events. Late in the afternoon of July 5, 1986, Deputy Norris responded to a report of an armed robbery at a Phillips 66 station on the new Tampa highway. The victim informed Norris that she was held-up by a black male carrying a knife who in leaving the premises jumped into an automobile and drove away. Norris’ BOLO described the robber as a black male in his mid-twenties wearing a light-colored button-down shirt and blue jeans. The BOLO’s description of the escape vehicle was light-colored, yellowish or tan, possibly a General Motors make with sloping rear glass and displaying a temporary tag in the window. The driver of the getaway vehicle was also described as a black male.
Later that evening, between 10:00 and 11:00 P.M., Trooper Harris stopped an automobile for speeding in the vicinity of Highlands City approximately 31 miles from the location of the robbery; the car was a yellow or light tan Chrysler two-door with a temporary tag in the window, occupied by two black males. Once the stop was achieved, Chapel, the driver, exited the car and walked toward the front of the patrol car. While explaining to Chapel the reason for the stop, Harris formed a suspicion that the vehicle matched Norris’ *1140 BOLO which he had heard earlier that evening. He radioed for an officer knowledgeable about the robbery to be sent to the location.
Sergeant Whitis arrived on the scene a minute or so later while Chapel was standing with Harris in front of the trooper’s car. Chapel’s companion remained in the car on the passenger’s side. Whitis also believed the vehicle fit the BOLO and he communicated with Norris by radio asking that he transport the victim to the point of the stop. Norris informed Whitis in the radio communication that a knife had been used in the robbery. Whitis at that juncture asked the passenger to step out of the automobile; the passenger was a black male, wearing blue jeans and a khaki colored shirt. Believing that the passenger fit the BOLO description, Whitis searched the passenger area of the vehicle for a knife. Whitis found an H & R .32 caliber revolver under the passenger seat. A further search within the passenger area produced a .357 Ruger; it was found between the seat and the console. Chapel and his passenger were arrested for carrying concealed firearms; later, Chapel was also arrested by Harris for driving with an expired tag and no registration.
Harris’ detention of Chapel’s automobile for speeding is upheld as a valid traffic stop for the purpose of issuing a traffic citation incident to that stop. State v. Kehoe, 498 So.2d 560 (Fla. 4th DCA 1986). Thus, the core issue is the legality of the warrantless search of the vehicle which produced not a knife, but two guns.
The BOLO was insufficient in its particularity to provide a constitutional basis for effecting an arrest for robbery. See Granville v. State, 348 So.2d 641 (Fla. 2d DCA 1977). Moreover, approximately 5 to 6 hours had elapsed from the time of the report of the robbery to the moment of the stop, and the distance traveled was 31 miles from the scene of the offense, factors contraindicating the existence of probable cause to arrest for the robbery. But cf. Lachs v. State, 366 So.2d 1223 (Fla. 4th DCA 1979) (the police officer had a founded suspicion justifying the stop in the circumstance where an inordinate period had not passed from the broadcast of the BOLO to the moment of the stop and the stop occurred within the immediate area of the crime).
In spite of the BOLO’s lack of specificity, however, it did provide Whitis with sufficient information to formulate a reasonable suspicion that Chapel and his companion may have committed the armed robbery and that at least one of them was potentially dangerous. Knowledge of that kind and degree is articulable and sufficient to permit a protective search of the areas in an automobile where weapons can be hidden or readily reached in circumstances involving a routine traffic stop. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
Notwithstanding that both suspects were not in the automobile when the search occurred, it is evident that if they were released to reenter the automobile, one or the other could have armed himself with a weapon to use against the police. See Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Thus, the determinative factor is whether the officer conducting the search had a reasonable belief, grounded upon specific and articulable facts, that the detainees might have gained access to a weapon. In the face of that concern, Whitis’ observation that the vehicle and the passenger approximated the descriptions contained in the BOLO, and his knowledge that a knife had been used to accomplish the robbery, were sufficient to lead him reasonably to suspect that the passenger could be hiding a weapon. Whi-tis was, therefore, justified in not only asking the passenger to exit the vehicle but also in conducting a search of the area around the passenger seat. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).
Reversed.
DANAHY, C.J., and RYDER, J., concur.