518 So.2d 406 (1988)
The STATE of Florida, Appellant,
v.
Antonio LEWIS, Appellee.
No. 87-276.
District Court of Appeal of Florida, Third District.
January 5, 1988.
*407 Robert A. Butterworth, Atty. Gen. and Michele L. Crawford and Margarita Muina Febres, Asst. Attys. Gen., Tallahassee, for appellant.
Diaz & Batista and Jose R.E. Batista, Hialeah, for appellee.
Before SCHWARTZ, C.J., and HUBBART and JORGENSON, JJ.
SCHWARTZ, Chief Judge.
When undercover police officers arrived at a home in Dade County where they had previously arranged to buy a kilo of cocaine, they were told that the narcotics had not yet arrived. They left the residence awaiting a signal that the transaction could be completed. A short time thereafter, at 1:15 p.m., a surveillance team saw a green and white Buick driven by the defendant Lewis arrive at the house. After conversing with the occupants, he left the home and drove away at 1:22 p.m. At 1:29 p.m. the officers received the beeper call to return to the house. They did, made the "purchase" of the kilo which was by then available, and arrested the sellers. Based on a tip from one of them that more cocaine was due to arrive, they reestablished surveillance which, at 2:12 p.m., yielded the sight of Lewis driving his Buick slowly past the residence in question. When, after slowing down momentarily, he attempted to leave the vicinity, he was stopped by the surveillance unit in an unmarked police vehicle. The officers, with guns drawn, ordered Lewis from his car. One of the policemen explained to him that he was being stopped based on the fact that there had been a "drug arrest in the house and [the officer] believed that he had something to do with the deal." The guns were holstered, and Lewis was in the process of being given his Miranda rights when, before they could be completed, he stated that he had been given $500 to deliver cocaine for the transaction in question. The trial court granted the defendant's motion to suppress this statement on the ground that it was the product of a "full fledged" arrest which was not supported by probable cause. The state appeals. We reverse on the ground that the encounter between the police and Lewis was a Terry stop which was adequately based on founded suspicion.
In our view  given the limited extent of the intrusion upon the defendant's liberty, and the limited object of that restraint, that is, to investigate and dispel the officers' legitimate suspicions of Lewis's apparent involvement in the narcotics transaction which had just taken place  no more than a Terry v. Ohio[1] temporary stop and detention rather than an arrest, was involved here. See State v. Perera, 412 So.2d 867 (Fla. 2d DCA 1982), pet. for review denied, 419 So.2d 1199 (Fla. 1982); United States v. White, 648 F.2d 29 (D.C. Cir.1981) (leading, well reasoned case examining criteria distinguishing between stop and arrest), cert. denied, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981);[2]United States v. Poole, *408 718 F.2d 671 (4th Cir.1983); United States v. Bautista, 684 F.2d 1286 (9th Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983); United States v. Seni, 662 F.2d 277 (4th Cir.1981), cert. denied, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 664 (1982); compare United States v. Robertson, 833 F.2d 777 (9th Cir.1987). In reaching this conclusion, it does not matter, as was obviously appropriate in dealing with an apparent narcotics offender, see United States v. Oates, 560 F.2d 45, 62 (2d Cir.1977) ("firearms are as much tools of the trade as are most commonly recognized articles of narcotics paraphernalia"); Seni, 662 F.2d at 283; United States v. White, 648 F.2d 29 (D.C. Cir.1981), cert. denied, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981),[3] who was operating a moving automobile, see United States v. Patterson, 648 F.2d 625 (9th Cir.1981), that the stop was effected with momentarily drawn guns. Perera, 412 So.2d at 871; White, 648 F.2d at 35. As said in Perera
That the officers used their sirens and flashing lights and had their guns drawn also did not change the stop into an arrest. Obviously, an officer cannot stop a vehicle in the darkness without making an appropriate signal. Moreover, where there is a clear possibility of the type of criminal activity which the officers believed they were encountering in the present case, we cannot fault them for having their guns at the ready for their own protection. We know of no authority which limits the right of police to display a weapon where necessary to make a stop. To the contrary, the United States Supreme Court, in defining the concept of a temporary stop, has indicated that it can involve the display of force or authority. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Terry v. Ohio, 392 U.S. at 19, 88 S.Ct. at 1878-79, 20 L.Ed.2d at 904-05.
412 So.2d at 871. Nor was the confrontation turned from a stop to an arrest by the fact that Miranda warnings were given. See Poole, 718 F.2d at 673. See generally United States v. Lewis, 556 F.2d 446 (6th Cir.1977), cert. denied, 434 U.S. 863, 98 S.Ct. 193, 54 L.Ed.2d 137 (1977). The law is to the contrary.
There seems to be no dispute but that Lewis's observed connection with the narcotics deal  including the first appearance of the cocaine only after he arrived and his apparent interest in the transaction after it was over  was more than sufficient to constitute a founded or reasonable suspicion that he was engaged in criminal activity. See Perera; Poole, 718 F.2d at 674. Our holding that a Terry stop, which is constitutionally sustained by such a finding, occurred in this instance[4] therefore results in the determination that Lewis's admission was not tainted by any unconstitutional restraint and should not have been suppressed.
Reversed.
NOTES
[1] 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] When a "stop" ends and an arrest begins has been the subject of numerous judicial decisions. See, e.g., United States v. Hill, 626 F.2d 429 (5th Cir.1980); United States v. Wylie, 569 F.2d 62 (D.C. Cir.1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978). Judge Leventhal, concurring in Bailey v. United States, 389 F.2d 305 (D.C. Cir.1967), provides a framework for considering the question:

Whether there has been an arrest turns on whether there has been an imposition of custody, and this is a determination made after examining both the objective circumstances and the subjective feeling those circumstances are likely to evoke.
Id. at 314 (emphasis supplied). Among the circumstances courts consider when making this decision are: the officer's intent in stopping the citizen; the impression conveyed to the citizen as to whether he was in custody or only briefly detained for questioning; the length of the stop; the questions, if any, asked; and the extent of the search, if any, made.
648 F.2d at 33-34 (footnotes omitted).
[3] See also United States v. Vasquez, 634 F.2d 41, 43 (2d Cir.1980) (detectives justified in taking protective measures "particularly in view of the violent nature of narcotics crime"); Johantgen v. Commonwealth, 571 S.W.2d 110, 112 (Ky. Ct. App. 1978) (stressing that "narcotics investigations are fraught with danger and the officers had a right and duty to check appellant for weapons").
[4] Because of this determination we do not determine whether the facts known to the officer about Lewis constituted probable cause which would have sustained an actual arrest.