526 So.2d 170 (1988)
The STATE of Florida, Appellant,
v.
Alexander Oscar RUIZ, Appellee.
No. 87-2056.
District Court of Appeal of Florida, Third District.
May 31, 1988.
*171 Robert A. Butterworth, Atty. Gen. and Richard L. Polin, Asst. Atty. Gen. and Sue Fisher, Certified Legal Intern, for appellant.
Weiner, Robbins, Tunkey & Ross and Bill Tunkey and Benjamin S. Waxman, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
SCHWARTZ, Chief Judge.
This state appeal from an order suppressing the results of an allegedly unconstitutional questioning of the defendant presents a scenario remarkably similar to that involved in State v. Lewis, 518 So.2d 406 (Fla. 3d DCA 1988).[1] For many of the same reasons articulated in Lewis, we reverse the order under review.
The appellee Ruiz drove his car to a home which was the scene of the last in a series of controlled sales of cocaine to undercover Dade County narcotics officers. He arrived just at the point when the officers, including Detective Fernandez who was acting in a surveillance capacity, were about to end the investigation and arrest the perpetrators. A "take-down" signal was given and other officers went into the residence to secure the premises and take those involved into custody. Fernandez went to Ruiz's car with his gun drawn and ordered him out of the vehicle and to lie prone on the ground. Fernandez told him that the officers were involved in a narcotics investigation and that he was to remain in that position until it was ascertained who the actual suspects were. Without giving Miranda warnings, he then asked if Ruiz had a gun. Ruiz responded that one was indeed hidden beneath the passenger seat of his vehicle. The pistol was retrieved and Ruiz was thereupon formally arrested for carrying a concealed firearm. After Miranda warnings were then given to Ruiz for the first time, he admitted his involvement in the drug transaction and informed the officers of the location of additional quantities of cocaine and other contraband in his car.
In this ensuing prosecution on weapons and cocaine charges, the trial judge suppressed the gun and the contraband. He determined that Ruiz had actually been arrested, that is, taken into custody when he was asked about the gun, thus requiring prior Miranda warnings unless the "public safety" exception to that rule, established in New York v. Quarles,[2] applied. On the holding that it did not, the lower court ruled that Fernandez's question concerning the gun was improper without warnings and that what was revealed by and flowed from Ruiz's answer was unconstitutionally secured. We do not agree with this line of *172 reasoning or its result.[3] We hold to the contrary that (1) Fernandez made only a Terry stop of Ruiz which (2) was properly based upon a founded suspicion of criminal activity and (3) justified the question concerning the firearm he asked the defendant. We conclude that the subsequent search and seizure were therefore constitutionally valid.
1. It is first clear, as State v. Lewis holds, that at the time Ruiz told Fernandez the location of his gun, he had been subjected only to a Terry v. Ohio[4] stop and detention for investigation rather than a full-fledged custodial arrest. In so concluding, it does not matter that, in anticipation of the danger presented by a suspected narcotics offender, the officer's gun had been drawn; that, unlike Lewis, it had apparently not been holstered, State v. Perera, 412 So.2d 867 (Fla. 2d DCA 1982) (cited in Lewis), pet. for review denied, 419 So.2d 1199 (Fla. 1982); United States v. White, 648 F.2d 29 (D.C. Cir.1981) (same), cert. denied, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981); United States v. Serna-Barreto, 842 F.2d 965 (7th Cir.1988); United States v. Roper, 702 F.2d 984 (11th Cir.1983); United States v. Seni, 662 F.2d 277 (4th Cir.1981), cert. denied, 455 U.S. 950, 102 S.Ct. 1453, 71 L.Ed.2d 664 (1982), or that Ruiz had been required to lie face down on the ground. United States v. Buffington, 815 F.2d 1292 (9th Cir.1987); United States v. Jacobs, 715 F.2d 1343 (9th Cir.1983); see also United States v. Bautista, 684 F.2d 1286 (9th Cir.1982) (cited in Lewis; even handcuffing of the defendant, not involved here, does not convert stop into an arrest), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983); United States v. Manbeck, 744 F.2d 360, 379 (4th Cir.1984) (questioning in police car not arrest requiring Miranda warnings), cert. denied, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). See generally United States v. Bengivenga, 845 F.2d 593 (5th Cir.1988); United States v. Parr, 843 F.2d 1228 (9th Cir.1988).
2. As in Lewis  and as the trial court specifically found here  the stop we have found occurred in this case was properly supported by a founded suspicion that Ruiz's presence at the exact time and place of the culmination of a cocaine deal indicated his involvement in that criminal activity.
3. Finally, it is clear that the officer's questioning of the defendant about a gun was constitutionally permissible. Although adherence to Miranda is required in most actual arrests, one of the very purposes of a Terry investigatory stop, in contrast, is for the officer to inquire concerning the validity of a founded suspicion which has arisen about the suspect. See United States v. Parr, 843 F.2d at 1228. It follows that even in the course of an ordinary Terry stop, Miranda warnings are not required before questioning. See United States v. Quinn, 815 F.2d 153 (1st Cir.1987); United States v. Jones, 543 F.2d 1171 (5th Cir.1976), cert. denied, 430 U.S. 957, 97 S.Ct. 1604, 51 L.Ed.2d 807 (1977); United States v. Hickman, 523 F.2d 323 (9th Cir.1975), cert. denied, 423 U.S. 1050, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976); United States v. Thomas, 396 F.2d 310 (2d Cir.1968). See generally W. Ringel, Searches & Seizures, Arrests and Confessions § 27.3(a)(3), at 27-19 n. 55 (1987).
This rule is even more applicable when, as here, there is a real probability that the suspect is armed and presents a danger to the officer's safety and the question itself concerns the existence and location of a *173 weapon. See Terry v. Ohio, 392 U.S. at 30, 88 S.Ct. at 1884-85, 20 L.Ed.2d at 911 ("To dispel his reasonable fear for [the officer's] own safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search ... in an attempt to discover weapons which might be used to assault him."). Thus, for the very reason that Fernandez was justified in himself using a weapon to make the stop, that is, the likelihood that a suspected narcotics offender would have a firearm, see Lewis, 518 So.2d at 408, Terry would have justified an actual frisk or pat-down to determine if he did. See United States v. Oates, 560 F.2d 45 (2d Cir.1977); United States v. Mack, 421 F. Supp. 561 (W.D.Pa. 1976), aff'd, 568 F.2d 771 (3d Cir.1978). It is an a fortiori proposition that an oral inquiry, which is much less intrusive than an invasion of the offender's person, was thoroughly justified.[5] As the court said in United States v. Harris, 528 F.2d 914 (4th Cir.1975), cert. denied, 423 U.S. 1075, 96 S.Ct. 860, 47 L.Ed.2d 86 (1976),
[I]t is undisputed that the agents could have walked directly up to Harris, detained him, and frisked him. The product of such a search would have been admissible. The circumstance that they politely asked about the pistol, instead of forcibly seizing it, makes it no less admissible.
528 F.2d at 915. Pope v. State, 478 P.2d 801 (Alaska 1970), is likewise closely on point:
For the same reason the officer also had the right to conduct a strictly limited search ("frisk") of Pope's person for weapons under the rule of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 21 L.Ed.2d 889 (1968), which he did. To hold that, that while a policeman faced with an emergency such as the one which confronted Officer Pavlovich may "frisk" a suspect for weapons he may not simultaneously ask him whether he is armed, would be an unrealistic and unreasonable extension of the Miranda rule.
478 P.2d at 805.
Since, for these reasons, there was no constitutional impropriety in Fernandez's inquiry or in anything which followed, the order of suppression under review is
Reversed.
NOTES
[1] Lewis was decided after the order on appeal.
[2] 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).
[3] Our disposition makes it unnecessary to determine whether the Quarles exception indeed applies to the facts of this case. Nor do we determine the correctness or the relevance of the trial judge's conclusion that there was no probable cause as to Ruiz's guilt which would justify an arrest if one had in fact occurred. We do note the possibility that even Miranda warnings or the application of the Quarles exception might not save the results of questioning the defendant if he were unjustifiably in actual custody. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); State v. Dodd, 396 So.2d 1205 (Fla. 3d DCA 1981), approved, 419 So.2d 333 (Fla. 1982).
[4] 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[5] We also note, but need not directly decide, that the proximity of Ruiz to his vehicle during the course of the stop may well have justified a search of the car, even without his statement, under Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). See Mitchell v. State, 522 So.2d 1003 (Fla. 4th DCA 1988); State v. Chapel, 510 So.2d 1138 (Fla. 2d DCA 1987); cf. Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (since Miranda is not constitutional rule, confession secured after Miranda violation not subject to fruit of poisonous tree doctrine).