SHIVERS, Chief Judge.
Following a conviction for possession of crack cocaine, appellant appeals the denial of his motion to suppress and the trial court’s imposition of a “probationary split sentence.” We affirm.
According to Officer Parsons, an informant equipped with a wireless transmitter radioed to him that he was witnessing a car near the Ebony Lounge from which a female was distributing crack cocaine to individuals outside the lounge. The Officer said that, according to the informant, the female subsequently reentered the car with crack still on her person and there was crack in the car that the informant could see. The car then pulled away but officers in the area shortly obtained visual contact with the car and followed it until it pulled over of its own accord. Appellant was driving the car. At that point police officers stepped out of their cars and appellant stepped out of his. The police identified themselves as police officers, told appellant he was under arrest, and handcuffed him and the female passenger. According to some of the officers at the scene of the arrest, handcuffing is a standard operating procedure in suspected crack felonies because automatic weapons have been found to be often associated with such activity.
*128 Officer Hendry, according to his report and the corroborating testimony of another officer, approached appellant after he was handcuffed, asked him if he could search him while informing him of his right to refuse, and appellant said “go ahead, search me.” Officer Hendry found crack cocaine and cannabis in appellant’s pockets.
In support of the trial court’s ruling, appellee does not argue that police had probable cause to arrest appellant and instead argues that, notwithstanding the use of handcuffs, the detention of appellant was á valid Terry stop, and thus his consent to search was not tainted. Appellee refers to case law from the Third and Fourth Districts holding that when executing a search warrant, police may handcuff persons temporarily and lawfully detain them on the premises without automatically turning the detention into an arrest. Wilson v. State, 547 So.2d 215 (Fla. 4th DCA 1989); Harper v. State, 532 So.2d 1091 (Fla. 3d DCA 1988).
In Harper v. State, 532 So.2d 1091 (Fla. 3d DCA 1988), a SWAT team entered a crack house pursuant to a warrant and found Harper standing next to a counter on which lay cocaine. The officers placed Harper face down on the floor and cuffed his hands. When Harper was asked for his ID, he told the officer to take it out of his back pocket. In Harper’s wallet was discovered Salvadorian currency which police linked to a murder. The district court found that Harper’s seizure amounted to a Terry stop rather than an arrest. The court held:
On two recent occasions, we have considered similar questions in factual contexts which did not represent nearly so great and apparent danger to the police as the one here. See Ruiz v. State, 526 So.2d 170 (Fla. 3d DCA 1988); State v. Lewis, 518 So.2d 406 (Fla. 3d DCA 1988). In those cases, we held that an investigatory stop did not ripen into a custodial arrest merely because drawn guns were used, Ruiz, 526 So.2d at 172; Lewis, 518 So.2d at 407-08, or because the defendant was physically restrained by being required to lie prone on the ground. Ruiz, 526 So.2d at 172. The only variation on that theme here is that Harper was handcuffed. Under these circumstances, as was specifically held in United States v. Bautista, 684 F.2d 1286 (9th Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983), which was cited in Ruiz and Lewis, this fact makes no difference.
Harper, 532 So.2d at 1093.
The Bautista court held that “police conducting on-the-scene investigations involving potentially dangerous suspects may take precautionary measures if they are reasonably necessary.” Bautista, 684 F.2d at 1289. The use of handcuffs in Bautista was found not excessive because it was not unreasonable to take such protective measures before remaining with two suspected, armed bank robbers who acted nervous and appeared to contemplate flight.
Because of the high incidence of weapons associated with cocaine trafficking, particularly in light of the irrationality that this drug produces, we do not depart from the rationale of Bautista, and Harper in this case and find that the legality of appellant’s temporary detainment was not vitiated by having been handcuffed during it. Finding appellant’s handcuffed temporary detainment valid, it follows that the voluntariness of his consent to search was not compromised by the use of handcuffs alone. The voluntariness vel non of a consent to search is determined in view of the totality of the circumstances, and in a proper case consent can be voluntary even after an invalid arrest. Bailey v. State, 319 So.2d 22 (Fla.1975). There are no other facts indicating that appellant’s consent was anything other than voluntary.
However, because the propriety of this practice is of great public importance, we certify the following questions:
WHETHER IT IS PROPER FOR POLICE TO HANDCUFF A PERSON WHOM THEY ARE TEMPORARILY DETAINING.
WHETHER A PERSON’S CONSENT TO SEARCH CAN LEGALLY BE VOLUNTARY IF GIVEN WHILE HAND *129 CUFFED DURING TEMPORARY DETAINMENT.
As to the imposition of a “probationary-split sentence,” we affirm on the basis of Poore v. State, 531 So.2d 161 (Fla.1988).
JOANOS, J., concurs.
ZEHMER, J., specially concurs, with opinion.