592 So.2d 1082 (1992)
Willie REYNOLDS, Petitioner,
v.
STATE of Florida, Respondent.
No. 75832.
Supreme Court of Florida.
January 2, 1992.
Rehearing Denied February 25, 1992.
*1083 Nancy Daniels, Public Defender and Michael J. Minerva, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen. and Virlindia Doss, Asst. Atty. Gen., Tallahassee, for respondent.
GRIMES, Justice.
We review Reynolds v. State, 558 So.2d 127 (Fla. 1st DCA 1990), on the basis of two questions certified by the First District Court of Appeal to be of great public importance:
WHETHER IT IS PROPER FOR POLICE TO HANDCUFF A PERSON WHOM THEY ARE TEMPORARILY DETAINING.
WHETHER A PERSON'S CONSENT TO SEARCH CAN LEGALLY BE VOLUNTARY IF GIVEN WHILE HANDCUFFED DURING TEMPORARY DETAINMENT.
Id. at 128-29. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We address only the issues raised by the certified questions.
On the night of October 13, 1988, members of the Tallahassee Police Department "Crack Squad" were conducting an undercover investigation in an area known for high consumption and sale of drugs, particularly *1084 cocaine. The Crack Squad was specifically seeking out persons distributing cocaine to dealers and was avoiding street vendors. During the course of the investigation, a confidential informant equipped with a wireless transmitter radioed to one of the police officers that he was witnessing a female distribute crack cocaine from a car to individuals outside a lounge. The informant told the officer, who was posted approximately two blocks away, that the female reentered the car with crack still on her person and that he saw crack in the car. The car pulled away from the lounge. Officers obtained visual contact with the vehicle within seconds and followed it until it pulled over of its own accord at a gas station/convenience store. Petitioner Reynolds was the driver of the car.
When Reynolds stepped out of the car, one of the officers told him he was under arrest. A second officer handcuffed him. A third officer advised Reynolds that this was a narcotics investigation and conducted a pat-down that did not reveal any weapons. The officer did not remove the handcuffs after the pat-down but asked Reynolds for consent to search him, informing him that he had the right to refuse. Reynolds twice consented to be searched. The officer found two bags of what he suspected to be cannabis. Reynolds then indicated that he did not want to be searched. The officer placed Reynolds under arrest. A subsequent search revealed cocaine in Reynolds' jacket pocket.
Reynolds moved to suppress the drugs seized, claiming the search violated the Fourth Amendment of the United States Constitution and article I, section 12 of the Florida Constitution. At the hearing, two police officers testified and the report of a third was admitted into evidence. Reynolds did not testify. The trial court denied the motion. Reynolds pled no contest to possession of crack cocaine, reserving the right to appeal the denial of his motion to suppress.
The district court of appeal found (1) that the stop of the automobile was a valid temporary detainment that was not vitiated by the handcuffing and (2) that Reynolds' consent to the search was not compromised by the handcuffing.
We address first the question of whether police may properly handcuff a person whom they are temporarily detaining. Despite the fact that the police announced that Reynolds was under arrest when he stepped out of the car, the State does not argue that there was probable cause to arrest Reynolds. Rather, the State contends that the officers conducted a permissible investigatory stop. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the right of police officers, absent probable cause, to stop and question persons whom they reasonably suspect have committed or are about to commit a crime and to frisk such persons reasonably suspected to be armed and dangerous. Reynolds concedes that there was reasonable suspicion to stop the car and question him. He argues, however, that the police exceeded the limits of a permissible Terry stop because they handcuffed him without probable cause to arrest or a reasonable belief that weapons were present.
The United States Supreme Court has refused to apply a bright-line test for determining what police action is permissible in an investigatory stop. United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1574, 84 L.Ed.2d 605 (1985). Rather, each case turns on its particular facts. Terry v. Ohio, 392 U.S. at 29, 88 S.Ct. at 1884. The appropriate question in each case is whether the action was reasonable under the circumstances. This requires a twofold inquiry  whether the action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Id. at 19-20, 88 S.Ct. at 1878-79.
Courts have generally upheld the use of handcuffs in the context of a Terry stop where it was reasonably necessary to protect the officers' safety or to thwart a suspect's attempt to flee. See, e.g., United States v. Crittendon, 883 F.2d 326 (4th Cir.1989) (use of handcuffs during investigative stop reasonably necessary to maintain *1085 status quo and protect officer's safety); United States v. Glenna, 878 F.2d 967 (7th Cir.1989) (use of handcuffs during investigative stop not improper where police found ammunition and explosives on suspect); United States v. Taylor, 716 F.2d 701, 709 (9th Cir.1983) (use of handcuffs not improper where suspect made furtive movements with hands after refusing an order to put his hands in the air); United States v. Bautista, 684 F.2d 1286 (9th Cir.1982) (use of handcuffs during Terry stop upheld where an armed robbery suspect was still at large and handcuffs eliminated possibility of assault or escape attempt), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); Howard v. State, 664 P.2d 603 (Alaska Ct. App. 1983) (drawn guns and handcuffing do not necessarily turn investigative stop into arrest); People v. Allen, 73 N.Y.2d 378, 540 N.Y.S.2d 971, 538 N.E.2d 323 (1989) (police justified in handcuffing armed robbery suspect to ensure their safety while moving him out of alley to conduct pat down); State v. Wheeler, 108 Wash.2d 230, 737 P.2d 1005 (1987) (handcuffing suspected burglar for two-block ride to scene of burglary upheld). See also United States v. Kapperman, 764 F.2d 786, 790, n. 4 (11th Cir.1985) (neither handcuffing nor other restraints automatically convert Terry stop into an arrest requiring probable cause; inquiry is reasonableness). Likewise, we do not find Terry and its progeny to prohibit placing a suspect in handcuffs during the course of an investigative detention where the circumstances reasonably warrant such action. If an officer reasonably believes that an investigative stop can be carried out only in such a manner, it is not a court's place to substitute its judgment for that of the officer. United States v. Sharpe, 470 U.S. at 686-87, 105 S.Ct. at 1575-76; United States v. Glenna, 878 F.2d at 972-73. Accordingly, we answer the first certified question with a qualified affirmative, in that we find that police may properly handcuff a person whom they are temporarily detaining when circumstances reasonably justify the use of such restraint.
We do not suggest that police may routinely handcuff suspects in order to conduct an investigative stop. Whether such action is appropriate depends on whether it is a reasonable response to the demands of the situation. When such restraint is used in the course of an investigative detention, it must be temporary and last no longer than necessary to effectuate the purpose of the stop. The methods employed must be the least intrusive means reasonably available to verify or dispel in a short period of time the officers' suspicions that the suspect may be armed and dangerous. United States v. Glenna, 878 F.2d at 972. Absent other threatening circumstances, once the pat-down reveals the absence of weapons the handcuffs should be removed.
In the case before us, Reynolds claims that the court below improperly relied on generalized assertions about drug dealers to justify the handcuffing. He argues that there were no specific, articulable facts that supported a reasonable belief that he was armed and dangerous. The State responds that a reasonable belief that a suspect may be armed may be predicated on the nature of the criminal activity involved. The State argues that an officer conducting an investigative stop has only his generalized knowledge, training, and experience to apply to the situation confronting him at the moment. Applying those factors to the circumstances here, the State asserts, the police had a reasonable belief that the handcuffing was necessary for their own protection.
We find that the initial handcuffing of Reynolds was within the bounds of a permissible Terry stop and search for weapons. The information provided to the officers by the informant reasonably led them to suspect that a crime involving distribution of crack cocaine had occurred. The officers had used this informant before and he had proved reliable. The suspected crime was more than a simple street purchase of drugs. Officers reasonably believed that the woman in the car was resupplying street vendors with crack cocaine, and Reynolds was driving the car. The suspected felony occurred at night in a neighborhood known for a high incidence of cocaine trafficking and use. One of the *1086 officers testified that in cocaine cases "we experience on a regular basis very intense violent resistance many times immediately upon contact in a restraining or apprehension situation." Another officer testified that she had been hurt in such a situation. Based on their knowledge and personal experience with this type of crime, the officers concluded there was reason to believe that the persons in the vehicle carrying the suspect might be armed or would react irrationally when confronted by the police. Police officers are not required to ignore their experience in determining what action is appropriate. Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883 (in determining whether officers acted reasonably under the circumstances, due weight must be given to the specific reasonable inferences which they are entitled to draw from the facts in light of their experience). We find that a "reasonably prudent [person] in the circumstances would [have been] warranted in the belief that his safety or that of others was in danger." Id.
Although we find that the initial handcuffing of Reynolds was appropriate, we find that the continued use of handcuffs after the pat-down was illegal. At that point, the officers had no reason to believe that weapons were present. According to the testimony of one of the officers, the suspects offered no resistance, were not particularly belligerent, and did not make any threats. Under these facts, the use of handcuffs after the pat-down was not reasonably justified under the circumstances.
We turn now to the second certified question  whether a person's consent to search can legally be voluntarily given while handcuffed during detainment. We address first the validity of the consent in this case. The question of whether a consent is voluntary is a question of fact to be determined from the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980); Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). See also Schneckloth v. Bustamonte, 412 U.S. at 248, 93 S.Ct. at 2058; Bumper v. North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 1791-92, 20 L.Ed.2d 797 (1968). Where there is an illegal detention or other illegal conduct on the part of the police, a consent will be found voluntary only if there is clear and convincing evidence that the consent was not a product of the illegal police action. Norman v. State, 379 So.2d 643, 647 (Fla. 1980); Bailey v. State, 319 So.2d 22, 28-29 (Fla. 1975). Otherwise, the voluntariness of the consent must be established by a preponderance of the evidence. Denehy v. State, 400 So.2d 1216 (Fla. 1980); Elsleger v. State, 503 So.2d 1367 (Fla. 4th DCA), dismissed, 511 So.2d 298 (Fla. 1987).
The only fact in favor of finding Reynolds' consent to the search voluntary is the report of one of the police officers, introduced into evidence, which states that the officer informed Reynolds of his right to refuse the search. This fact alone is not dispositive. Cf. Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 2261-62, 45 L.Ed.2d 416 (1975) (Miranda warning given after illegal arrest does not alone and per se always make subsequent confession sufficiently a product of free will to break the causal connection between the illegality and the confession, but is merely a factor to be considered with the temporal proximity of the arrest and confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct); Bailey v. State, 319 So.2d at 27 (knowledge or lack of knowledge of right is factor to be considered along with all other factors in determining validity of consent). The other pertinent facts are that Reynolds was confronted by three police officers and told he was under arrest, even though it is now conceded that there was no probable cause for his arrest. He was handcuffed and frisked. Immediately thereafter, while still handcuffed, police asked Reynolds for *1087 permission to search his person and told him that he had the right to refuse. We do not find these circumstances to present clear and convincing evidence that the consent was voluntary.
Although we have found the consent in this case to be invalid, we are reluctant to hold that consent given while handcuffed can never be voluntary under any circumstances. There may be limited circumstances in which consent given while validly handcuffed during a temporary detainment may be found to be voluntary. See, e.g., United States v. Glenna, 878 F.2d at 967. Because of the inherently coercive nature of handcuffing, the fact that one is under such restraint at the time consent is given will make the State's burden to show voluntariness particularly difficult. However, it is not the presence or absence of any one factor alone that determines the validity of a consent. The question turns on the particular circumstances of each case. There is "no talismanic definition of `voluntariness,' mechanically applicable to the host of situations where the question has arisen." Schneckloth v. Bustamonte, 412 U.S. at 224, 93 S.Ct. at 2046. "[I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." Id. at 233, 93 S.Ct. at 2050. Thus, we do not address under what circumstances consent given while handcuffed during a temporary detainment could be considered voluntary. That "will have to be developed in the concrete factual circumstances of individual cases." Terry, 392 U.S. at 29, 88 S.Ct. at 1884.
As qualified in this opinion, we answer the certified questions in the affirmative. Because we conclude that Reynolds' consent was involuntary, we quash the decision below and remand for further proceedings.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and HARDING, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, concurring in part, dissenting in part.
I concur in that part of the majority opinion holding that Reynolds' consent was involuntary. I also agree with the proposition that initially handcuffing a detainee may be permitted during a lawful investigatory stop when an officer has a reasonable suspicion that the detainee may be armed and dangerous. However, reasonable suspicion must be assessed by examining the specific facts of each case and cannot be derived, as I believe was done here, simply from the type of crime that is being investigated.
In all of the cases cited by the majority, the courts upheld the use of handcuffs because the police had particularized suspicion that the individual to be questioned was either dangerous or likely to flee. For example, in United States v. Glenna, 878 F.2d 967 (7th Cir.1989), police learned via a teletype that Glenna was suspected of drug trafficking and was armed with several small weapons and an explosive device. Additionally, when the police stopped Glenna, an officer seized a loaded clip bulging from his pocket and handcuffed him. A more thorough pat-down produced a small explosive. Police also found illegal fireworks, an automatic weapon, a knife, and a pipe bomb in Glenna's van. The court found the use of handcuffs reasonable because the teletype "provided the basis for a reasonable belief that Glenna was armed and dangerous," and that the discovery of the loaded clip enhanced that portrayal. Id. at 973. In United States v. Crittendon, 883 F.2d 326 (4th Cir.1989), one of the suspects detained with the defendant attempted to flee. The court found that the officer who cuffed the defendant reasonably could have anticipated that he might have to aid his fellow officers, and that the defendant also might have attempted to flee.
Similarly, in United States v. Bautista, 684 F.2d 1286 (9th Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983), the court upheld the use of handcuffs during the initial stop where defendants *1088 were suspected of committing armed robbery only minutes earlier, and one of the armed suspects was still at large. In United States v. Taylor, 716 F.2d 701 (9th Cir.1983), the court found the use of handcuffs reasonable where the suspect made furtive movements with his hands after refusing an order to put his hands in the air.
In each of these cases, unlike the one before us, particular facts in each situation supported the officers' use of handcuffs. Here, the police informant did not report that Reynolds or his companion was armed or dangerous. Indeed, there was no information as to Reynolds at all. The only information provided to the police on this stop was that drugs were being distributed at a lounge by the female who then entered Reynolds' car with the remaining drugs. Upon detention, Reynolds did nothing to provoke suspicion that he was armed or dangerous. Nothing was found on his person or immediate vicinity to give rise to any suspicion that he or his female companion was armed and dangerous. Rather, police officers merely testified that "handcuffing is a standard operating procedure in suspected crack felonies." Reynolds v. State, 558 So.2d 127, 127 (Fla. 1st DCA 1990) (emphasis added). None of the cited cases permit the use of handcuffs as a matter of routine or based solely on the fact that the detainees were suspected of dealing drugs.
The routine use of force in the absence of probable cause or without any reasonable suspicion of a threat to the officers has not heretofore been permitted. To the contrary, it is well-recognized that "handcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical Terry stop." Bautista, 684 F.2d at 1289 (emphasis added). It makes no sense to suggest that there should be an exception to that rule if the person detained is stopped when police are investigating a drug offense. The exception would soon swallow the rule, and investigatory stops without any probable cause would be nothing but full-blown seizures in the physical as well as in the figurative sense of the word in every case. Police are not required to ignore their experience. But the bare asserted conclusion that the officers "experience on a regular basis very intense violent resistance" does not establish a sufficient factual basis to support the routine use of handcuffs. Until a factual basis is established that proves that a pat-down conducted pursuant to Terry is ineffective in disarming detainees, the use of handcuffs in suspected drug cases should be handled as for every other type of crime: as the particular facts warrant. In the absence of any factual evidentiary basis in this record that the detainee posed a particularized threat to the officers different from any other investigatory stop, I believe the initial handcuffing was illegal and constituted an impermissible seizure.
KOGAN, J., concurs.