744 So.2d 1167 (1999)
Terry J. GOSS, Appellant,
v.
STATE of Florida, Appellee.
No. 98-02623.
District Court of Appeal of Florida, Second District.
November 3, 1999.
John R. Dixon of Dixon, Lefler & Lorenzen, P.A., Tampa, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anne Sheer Weiner, Assistant Attorney General, Tampa, for Appellee.
BLUE, Acting Chief Judge.
Terry J. Goss appeals his convictions for possession of cocaine and possession of drug paraphernalia and challenges the trial court's denial of his motion to suppress. Because the State failed to carry its burden regarding the scope of the investigatory stop, we reverse the denial of the motion to suppress.
The testimony at the suppression hearing was very brief. Officer Aljumaily testified that he was approached by an individual who claimed that he had been *1168 charged money to park in a city-owned parking lot. The individual pointed out Goss as the person who charged him for parking. The officer stopped Goss, patted him down for weapons, placed him in the patrol car, and conducted a field interview. He could not recall whether Goss was handcuffed. After warning Goss not to charge people for parking in city-owned lots, the officer released Goss. The officer subsequently discovered contraband in the back seat of the patrol car and Goss was arrested.
We conclude first that the trial court was correct in finding that the officer had a reasonable suspicion sufficient to temporarily detain Goss. A report of criminal activity in the area will justify a stop when the circumstances create a reasonable suspicion that the person being stopped has participated or will participate in criminal activity. See Smith v. State, 637 So.2d 343 (Fla. 2d DCA 1994). Although an officer cannot make a warrantless arrest for a misdemeanor or ordinance violation unless it is conducted in the officer's presence, see § 901.1505, Fla. Stat. (1997), this does not preclude the officer from conducting an investigatory stop based on a reasonable suspicion that the person has committed, is committing or is about to commit a crime. See § 901.151.
While an investigatory stop was justified under these facts, we next consider whether the stop became a de facto arrest without probable cause when the officers placed Goss in the patrol car. "The Supreme Court has acknowledged the `difficult line-drawing problems in distinguishing an investigative stop from a de facto arrest.'" Zukor v. State, 488 So.2d 601, 604 n. 4 (Fla. 3d DCA 1986) (quoting United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)). In reviewing the lawful parameters of an investigatory stop, the question is "whether the action was reasonable under the circumstances. This requires a two-fold inquiry whether the action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Reynolds v. State, 592 So.2d 1082, 1084 (Fla.1992).
In Reynolds, the supreme court held that the use of handcuffs did not convert an investigatory stop into an arrest when the use of handcuffs "was reasonably necessary to protect the officers' safety or to thwart a suspect's attempt to flee." 592 So.2d at 1084. See also Saturnino-Boudet v. State, 682 So.2d 188 (Fla. 3d DCA 1996) (noting that during investigatory stop an officer may detain someone at gunpoint and/or by handcuffs without converting the stop into a formal arrest). But in State v. Anderson, 591 So.2d 611, 613 (Fla.1992), after concluding that the investigatory stop was supported by a founded suspicion, the supreme court specifically noted that it was not addressing "the legality of placing Anderson in the police car during the temporary detention" because this issue had not been raised. 591 So.2d at 613 n. 2. This is the exact issue raised herein.
In the present case, placing Goss in the patrol car increased the intrusive nature of the stop. Furthermore, the State introduced no testimony or evidence showing a reasonable necessity for this action, either for officer safety or to prevent Goss from fleeing.[1] We note that the officer was not investigating a particularly violent or serious crime and the individual who reported Goss did not report any threats or violent actions by him. The cases recognizing a de facto arrest generally involve physical removal from the scene and transportation, not just temporary placement, in a patrol car. See Saturnino-Boudet, 682 So.2d at 193 and cases quoted therein. However, "[i]t is the State's burden *1169 to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (holding that Royer was under arrest as a practical matter when the officers' conduct was more intrusive than necessary to accomplish an investigatory detention; Royer was placed in a small room with two officers who had retrieved his checked baggage and held his ticket and identification). See also State v. J.Y., 623 So.2d 1232 (Fla. 3d DCA 1993) (finding de facto arrest requiring Miranda[2] warnings before interrogation when juvenile was questioned in his driveway, late at night, without his parents). Under the unique facts of this case, we conclude that the State failed to carry its burden of demonstrating that the officer was justified in placing Goss in the patrol car during this investigatory stop.
The State argues that Goss abandoned the property during a lawful stop. Anderson makes clear that "[a]n abandonment which is the product of an illegal stop is involuntary, and the abandoned property must be suppressed." 591 So.2d at 613. Therefore, the State's abandonment argument will not prevail unless the stop was lawful. Because the stop exceeded the lawful parameters of an investigatory stop under the facts of this case, the abandonment must be considered involuntary. Accordingly, we reverse the denial of the motion to suppress and remand with directions to discharge Goss.
Reversed and remanded with directions.
FULMER and DAVIS, JJ., Concur.
NOTES
[1] The State did not offer evidence showing that it was raining or that the temperature was either so hot or so cold that the patrol car offered needed shelter from the elements. Nor did the State show that Goss was invited to sit in the car and voluntarily accepted such an invitation.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).