COBB, J.
In February, 1997, the appellant, Christopher Green, was released from prison after serving time for attempted burglary of a dwelling. He had been incarcerated in 1994. Prior to his incarceration there had been a number of nighttime burglaries in the Ponte Vedra area of St. Johns Coun *1234 ty. Detectives there were aware that these burglaries were the work of a black man fitting Green’s description whose mo-dus operandi was to always leave $2.00 or $8.00 in the wallets of the victims. These burglaries ceased when Green was incarcerated and resumed immediately after his release from prison in 1997. This correlation in time and methodology aroused the suspicion of one Detective Kovalcik that Green was the perpetrator of the burglaries. He formed a “Quick Response Team” (QRT) to deal with the new outcrop of burglaries, and furnished the team information about Green — where he lived, where he worked, what vehicles he had access to, etc. It was the function of the team of detectives and officers to rapidly respond to burglary calls in the Ponte Vedra area.
In the early morning hours of August 24, 1997, there were two attempted burglaries of homes by an “unknown black male” and the QRT responded. At approximately 6:55 a.m. they spotted Green in a red Honda belonging to his girlfriend and stopped him. He initially consented to a search of the car, which produced burglary tools. Ultimately, a search warrant produced additional burglary tools, a black shirt and pants, cash and jewelry that came from other burglaries that night. Green was convicted of multiple counts of burglary, attempted burglary and grand theft. The issue on appeal, of course, is the legality of the stop and detention on the morning of August 24, 1997.[1]
Green argues that there was no well-founded, articulable suspicion that he committed a crime at the time of his detention, and therefore his consent to search was involuntary. He cites to the cases of Reynolds v. State, 592 So.2d 1082 (Fla.1992), Graham v. State, 714 So.2d 1142 (Fla. 1st DCA 1998), and Salem v. State, 645 So.2d 1023 (Fla. 2d DCA 1994). He contends that he was stopped not because of his suspicious. actions or because of a description of the culprit by the victims,[2] but simply because he was Christopher Green, a known burglar. Therefore, says Green, the articles seized from the vehicle should have been suppressed.
The state’s answer brief addresses a point not mentioned in Green’s Initial Brief: that the arresting officer knew that Green had a restricted driver’s license that allowed him to operate a motor vehicle for business purposes only and observed him driving at a time and location inconsistent with such purposes, thereby providing a basis for the stop.[3] During a valid traffic stop, contends the state, a law enforcement officer may ask for consent to search a vehicle. State v. Cromatie, 668 So.2d 1075 (Fla. 2d DCA 1996).
The state also argues that, even absent the drivers license infraction, there was probable cause to stop and detain Green because of his past burglary record, the fact that he matched the description of the individual given by the attempted burglary victims, and he was present in the area soon after those attempted burglaries.
In his reply brief Green argues that the arresting police officer would not have known that he was traveling with a restricted license except for the BOLO information provided by Detective Kovalcik. In other words, he feels that his rights were somehow violated by Kovalcik’s accurate suspicions. We fail to understand why Kovalcik would be proscribed from disseminating truthful information about Green to various police officials.
Green also argues, in respect to his suspended driver’s license, that it was possi *1235 ble he could have been going or coming to a job early in the morning when he was stopped. While that may have been a theoretical possibility, the fact is that the police knew at the time of Green’s detention, thanks to Kovalcik, that it was not true. No evidence was presented to the trial court at any time that Green was going to or coming from a legitimate job at the time he was stopped.
Moreover, given the facts set out above, it would have been reasonable to detain Green even absent the driver’s license problem. Indeed, it would have been a naive officer who did not entertain an ar-ticulable suspicion of Green at the point of the initial detention.
AFFIRMED.
ANTOON, C.J. and DAUKSCH, J„ concur.

.The appellant also challenges the trial court’s habitualization sentence, but his arguments pertaining thereto are based on a misunderstanding of the applicable statute.

. In point of fact, one of the victims of one of the attempted burglaries that night later identified Green as the culprit.

. This was a'finding of fact by the trial court at the suppression hearing.