KELLY, Judge.
D.L.J. appeals from the order adjudicating him guilty of carrying a concealed firearm. He argues that the police did not have probable cause to conduct a pat-down search for weapons, and therefore the trial court erred when it denied his motion to suppress. We agree.
The record shows that the St. Peters-burg police received a complaint that someone was throwing rocks at a vacant house. The caller did not provide any further information other than the address of the house where the rock throwing was occurring. Officers Arkovich and Payton went to the address given by the caller. When they arrived, they saw two juveniles running westbound from the back of the house and several others on the northwest corner of the property. Officer Arkovich chased the two juveniles who had taken flight. Officer Payton approached the juveniles who had not run; D.L.J. was among those. Officer Payton patted down D.L.J. and found a loaded magazine in his left front jean pocket. He asked where the gun was, and D.L.J. responded that it was in his left front shoe. The officers arrested D.L.J. and charged him with carrying a concealed weapon.
D.L.J. moved to suppress the evidence arguing that the seizure of the magazine and the gun violated section 901.151(5), Florida Statutes (2004), and the constitutions of the United States and Florida. Section 901.151(1), Florida’s stop and frisk statute, provides that a pat-down can be conducted during a valid detention if the police have probable cause to believe that the detained person is “armed with a dangerous weapon.” § 901.151(5), Fla. Stat. (2004).[1] The supreme court has interpreted the term “probable cause” in this statute to mean “reasonable belief.” See State v. Webb, 398 So.2d 820, 825 (Fla.1981); Sutton v. State, 698 So.2d 1321, 1323 (Fla. 2d DCA 1997). The officer must be able to articulate some basis which would support a reasonable belief that an individual is armed. Sutton, 698 So.2d at 1323.
*1135 At the suppression hearing, Officer Pay-ton, who conducted the pat-down, did not testify. Officer Arkovich testified, but he was not present when Officer Payton performed the pat-down, and he did not know why Officer Payton decided to pat down D.L.J. The State essentially conceded that the pat-down was not legal, stating that “[t]he State is not arguing per se on the legality of the pat down.” Instead it argued that the police lawfully obtained the gun by asking D.L.J. about the gun’s location and obtaining the weapon after D.L.J. told them it was in his shoe. The State contended that the officers had a right to stop D.L.J. or, alternatively, that it was a consensual encounter. The trial court properly rejected this argument, finding that if the pat-down was not proper, then the gun was the “fruit of a poisonous tree” and should be suppressed. Nevertheless, the trial court denied the motion after concluding that the pat-down was proper. The court based its conclusion on the facts that D.L.J. was present at the address where the rock throwing was reported, that other individuals at that address ran away when the police arrived, and D.L.J. was wearing baggy pants that made it “hard to see any kind of bulge or anything.”
While the trial court’s findings accurately reflect the circumstances surrounding the pat-down, its conclusion that the pat-down was proper is erroneous because the State offered no testimony from the officers indicating that because of these circumstances, they believed that D.L.J. was armed.[2] On the contrary, Officer Arkovich testified that by the time he went to where D.L.J. was, Officer Payton was already conducting the pat-down. He assumed it was for officer safety reasons, and he “didn’t know what they had on them at all.” He also testified that they had no information that D.L.J. might be armed, “but we can’t assume.” At best, this testimony established that Officer Payton assumed that Officer Arkovich was conducting a routine pat-down for officer safety as opposed to a pat-down based on a reasonable belief that D.L.J. was armed. “Pat-down searches performed routinely or for safety purposes only are constitutionally impermissible.” Hunt v. State, 700 So.2d 94, 95 (Fla. 2d DCA 1997); cf., D.O. v. State, 832 So.2d 256, 257 (Fla. 2d DCA 2002).
In this appeal, the State argues that the stop was justified under Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), and that therefore the officers were entitled to conduct the pat-down. We need not decide if the stop was valid because even if it was, a valid stop does not necessarily give officers the right to search an individual for weapons. Webb, 398 So.2d at 822; Sutton, 698 So.2d at 1323; Hamilton v. State, 612 So.2d 716, 718 (Fla. 2d DCA 1993); Harris v. State, 574 So.2d 243, 244 (Fla. 1st DCA 1991). Under the circumstances, the motion to suppress should have been granted. Accordingly, we reverse and remand with directions that D.L.J. be discharged.
Reversed and remanded.
FULMER, C.J., and DAVIS, J., Concur.

. Section 901.151(5) provides:
Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom the officer has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safely of the officer or any other person, the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.

. We do not intend to suggest that had an officer testified that these circumstances caused him to believe that D.L.J. was armed that we would agree the officer's belief was reasonable. See, e.g., Bradford v. State, 567 So.2d 911 (Fla. 1st DCA 1990) (holding that the officer did not have a reasonable suspicion to support his pat-down search of the defendant based only on the defendant’s wearing a loose jacket).