946 So.2d 1220 (2007)
Mark A. VITALE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-3371.
District Court of Appeal of Florida, Fourth District.
January 3, 2007.
Samuel J. Montesino of Samuel J. Montesino, P.A., West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, C.J.
In response to a medical emergency call, police entered appellant's vehicle and, in so doing, discovered cocaine. Appellant pled no contest to trafficking in cocaine, possession of cocaine, and driving with a suspended license, reserving his right to appeal the denial of his motion to suppress the cocaine. Because the police's entry into appellant's car was reasonable, and *1221 the contraband fell into plain view, we affirm.
Evidence at the suppression hearing established that on the afternoon of June 27, 2002, three officers responded to a "code 3," which is used to dispatch officers to a "person in danger." A "code 3" is a priority call requiring officers to use lights and sirens. The officers were advised that a vehicle, with its engine running, was parked in front of a convenience store and that the driver was "slumped over the wheel." The identity of the individual who called police was unknown. Viewed in the light most favorable to the trial court's ruling, the officers arrived within a minute or so of the call and found the driver, appellant, "excessively" slumped forward. Officer Lopez testified the man's position was such that it was not possible to conclude he was simply sleeping. The other two officers suggested appellant was "passed out."
Officer Lopez immediately opened the car door to render aid to appellant. The driver did not react. Lopez grabbed the driver and pulled him back into the driver's seat. Still, the driver did not react. Once appellant was back in the driver's seat, police noticed, in plain view, a baggie of a white powdery substance near his crotch area. Based upon their training and experience, the officers believed the substance to be cocaine.
Because the engine was still running, Officer Lopez reached over appellant, pulled up the emergency brake, and turned off the engine. Still, appellant did not react. After finding a pulse, Officers Lopez and Floyd tried to rouse appellant by shaking him and speaking in a loud voice. Lopez testified appellant began to come around and open his eyes, but was drowsy and like a "drunk[en] person." The officers removed appellant from the car as EMS was arriving. As they did so, the officers observed white specks on the driver's seat, consistent with cocaine. A driver's license check revealed appellant's license was suspended.
In seeking to suppress the evidence, citing the "anonymous tipster" line of cases, appellant argued that the entry into the vehicle was illegal as police had only an anonymous call, no independent evidence corroborating the tip, and no evidence of any criminal wrongdoing. While the State countered that the police were entitled to enter the vehicle under the "emergency doctrine" regardless of the absence of any suspicion of criminal activity or evidence to corroborate the tip, appellant insisted there was no "medical emergency" exception to the anonymous tipster cases. When questioned by the trial court regarding what the police should have done, appellant argued they were required to use the least intrusive means necessary to ascertain his well-being and that immediately opening the car door was not the least intrusive means. The trial court denied appellant's motion to suppress and this appeal followed.
There was no error in the trial judge's refusal to apply the anonymous tipster cases to the circumstances before him. It is true that before an anonymous tip can provide the reasonable suspicion necessary to support an investigatory stop, its reliability must be established by independent police corroboration. See, e.g., State v. Maynard, 783 So.2d 226 (Fla. 2001). But, here, police were dispatched to a medical emergency for the purpose of rendering aid to the drivernot to investigate a crimeand the Supreme Court has squarely held (1) that "the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid" and (2) that "police may seize any evidence *1222 that is in plain view during the course of their legitimate emergency activities." Mincey v. Arizona, 437 U.S. 385, 392-93, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); see also Zeigler v. State, 402 So.2d 365, 371 (Fla.1981).
Appellant next claims that, in upholding the entry and subsequent seizure, the trial court improperly looked to the officers' subjective intentions, rather than the objective test adopted in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), for assessing the reasonableness and validity of traffic stops. Any doubt regarding Whren's application to the "emergency doctrine" has recently been resolved. In Brigham City, Utah v. Stuart, ___ U.S. ___, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), the United States Supreme Court held the objective test adopted in Whren has equal application and force in the context of the "emergency doctrine." Florida's courts are bound by that decision. See, e.g., State v. Shaw, 784 So.2d 529, 530 (Fla. 1st DCA 2001) ("In evaluating search and seizure issues, Florida courts are bound by the Fourth-Amendment precedents of the United States Supreme Court.").
In Brigham, police responded to a 3:00 a.m. call concerning a loud party. Upon arrival, the officers heard shouting in the house and saw two juveniles in the backyard drinking beer. As the police entered the yard, they observed through the windows and screen door an altercation in the house between a juvenile and four adults. The adults were attempting to restrain the juvenile and, when the juvenile broke free, he punched one of the adults in the mouth, causing him to spit blood in the sink. The other adults continued to restrain the juvenile, pushing him up against the refrigerator. 126 S.Ct. at 1946. Police opened the screen door and announced their presence, but no one noticed. Police then entered the kitchen and called out a second time. Slowly, those in the kitchen became aware of the police and the altercation ended. The adults were arrested and charged with contributing to the delinquency of a minor, disorderly conduct, and intoxication. The defendants sought to suppress all evidence obtained as a result of the warrantless entry.
The Utah Supreme Court held the evidence should have been suppressed as the punch was insufficient to trigger the "emergency doctrine" and the officers involved had not acted to assist the injured adult, but, instead, in their law enforcement capacity. The United States Supreme Court rejected both conclusions, stating:
An action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." The officer's subjective motivation is irrelevant. . . .
. . . .
. . . [T]he officers had an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning. Nothing in the Fourth Amendment required them to wait until another blow rendered someone "unconscious" or "semi-conscious" or worse before entering. . . .
The manner of the officers' entry was also reasonable. After witnessing the punch, one of the officers opened the screen door and "yelled in police." When nobody heard him, he stepped into the kitchen and announced himself again. Only then did the tumult subside.
Id. at 1948-49 (citations omitted).
In light of Brigham, we agree with appellant's suggestion that the subjective *1223 intentions of the officers involved have no place in assessing whether their actions can withstand Fourth Amendment scrutiny. Our agreement does not, however, afford appellant any relief because, when viewed objectively, the circumstances were such that they warranted the officers' entry into appellant's vehicle. The evidence before the trial court established that (1) an anonymous caller reported that an individual was slumped over the wheel of his car; (2) officers arrived minutes later and found appellant in the condition described; (3) at least one of the officers testified that the driver was "excessively" slumped over in the driver's seat and his positioning was such that it was not possible that he was simply sleeping; and (4) the car was running and parked in a convenience store parking lotnot a place where drivers ordinarily pull over to take a nap.
Finally, we reach appellant's contention that, in responding to the medical emergency call, the officers were required to use the least intrusive means to ascertain his well-being. In support of this position, appellant cites Melendez v. Sheriff of Palm Beach County, 743 So.2d 1145 (Fla. 4th DCA 1999), and Reynolds v. State, 592 So.2d 1082 (Fla.1992). In Melendez, this court wrote that "[t]o comply with the Fourth Amendment's proscription against unreasonable search and seizures, the nature and extent of a detention based on something less than probable cause must be `minimally intrusive.'" 743 So.2d at 1148 (quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)). In Reynolds, while assessing the propriety of the use of handcuffs during an investigatory stop, our supreme court wrote that "[w]hen such restraint is used in the course of an investigative detention, it must be temporary and last no longer than necessary to effectuate the purpose of the stop. The methods employed must be the least intrusive means reasonably available to verify or dispel in a short period of time the officers' suspicions that the suspect may be armed and dangerous." 592 So.2d at 1085. Melendez and Reynolds both involved limitations on the scope of an investigatory stop. Again, this was not an investigatory stop. In assessing the propriety of police entering a home in response to a perceived emergency, the Brigham Court looked not to whether the police used the least intrusive means to ascertain an individual's well-being and render aid, but to the reasonableness of the police's actions under the circumstances. Although different steps might have been taken by the officers to verify appellant's medical condition, the actions employed were reasonable.
Affirmed.
WARNER and TAYLOR, JJ., concur.