CASANUEVA, Chief Judge.
 

 Debra Ballenger appeals her convictions for possession of illegal drugs and drug paraphernalia, asserting that the trial judge erred in denying her dispositive motion to suppress evidence seized during the traffic stop of the vehicle she was operating. Because we conclude that the search violated the Fourth Amendment to the Constitution of the United States as well as article I, section 12, of the Constitution of the State of Florida, we reverse.
 

 
 *1024
 

 Facts
 

 On December 11, 2007, a Lee County deputy sheriff stopped Ms. Ballenger and her passenger for failing to stop at a stop sign. As he approached the vehicle, the deputy observed both Ms. Ballenger and her passenger moving within the vehicle as though they were reaching for something either below or in the center console. The deputy instructed them to place their hands on their heads and he then removed Ms. Ballenger from the vehicle. He patted her down and, after finding nothing, handcuffed her for officer safety. She then stood, handcuffed, behind her car while it was searched.
 
 [1]
 
 A second deputy then arrived as backup. Without her consent, the second deputy conducted another pat-down for weapons on Ms. Ballenger and felt what he suspected to be a crack pipe. Upon asking whether he could remove the item, Ms. Ballenger acquiesced. When asked if she had anything else on her, she responded that there were Methadone pills in her front pocket.
 

 Analysis
 

 Ms. Ballenger first contends that there was no legal basis for the stop because no traffic violation had occurred. Although there was conflicting testimony regarding this issue, the trial judge found the officer’s testimony credible and determined that the stop was valid. A trial judge’s findings of fact will not be overturned on appeal if there is competent substantial evidence supporting them.
 
 See Johnson v. State,
 
 608 So.2d 4 (Fla.1992). Because there is competent evidentiary support that a traffic violation occurred, we affirm the trial court’s legal conclusion that the stop of Ms. Ballenger’s vehicle was lawful.
 
 See Whren v. United States,
 
 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
 

 Ms. Ballenger next contends that the first pat-down search was not justified by the movements the first deputy observed as he approached the vehicle. Because this issue involves the application of law to the facts of the case, it is subject to de novo review.
 
 See State v. Glatzmayer,
 
 789 So.2d 297 (Fla.2001). Witnessing both the driver and the passenger of the car reach down as though attempting to hide or grab something qualifies as “unusual conduct which leads [an officer] reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous,” and the officer is thus “entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.”
 
 Terry v. Ohio,
 
 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In light of the potential danger involved in pulling over an unknown vehicle and witnessing the occupants hurriedly moving items around, the officer was justified in ensuring that the occupants did not have weapons. Accordingly, the first pat-down was constitutionally valid.
 

 Once the first pat-down was finished without producing any threat to the officer, the constitutional underpinning of a pat-down evaporated, and the deputy should have removed the handcuffs from Ms. Ballenger. “Courts have generally upheld the use of handcuffs in the context of a
 
 Terry
 
 stop where it was reasonably necessary to protect the officers’ safety or to thwart a suspect’s attempt to flee.... Absent other threatening circumstances, once the pat-down reveals the absence of
 
 *1025
 
 weapons[,]” the use of handcuffs is improper.
 
 Reynolds v. State,
 
 592 So.2d 1082, 1084, 1085 (Fla.1992). Once Ms. Ballenger had been searched for weapons, any suspicion that she posed a threat vanished. As in
 
 Reynolds,
 
 in this case “the suspectf] offered no resistance, [was] not particularly belligerent, and did not make any threats. Under these facts, the use of handcuffs after the pat-down was not reasonably justified under the circumstances.”
 
 Id.
 
 at 1086. The use of the handcuffs is not the sole basis for our reversal, although it is a factor under these circumstances.
 

 Unlike the first pat-down, the second pat-down was constitutionally improper. In order to legally pat-down a detainee without consent or a warrant, “the officer must be able to articulate some basis which would support a reasonable belief that an individual is armed.”
 
 D.L.J. v. State,
 
 932 So.2d 1133, 1134 (Fla. 2d DCA 2006). When the second deputy patted down Ms. Ballenger, she had already been subjected to a pat-down revealing no weapons, and her hands remained cuffed behind her back. At the suppression hearing, the second officer offered no justification for the second pat-down, saying only that the first deputy requested it. Under these circumstances, there was no reasonable basis to believe that she was armed or posed a threat. Accordingly, the second pat-down was a violation of Ms. Ballenger’s Fourth Amendment rights, and the evidence it produced must be suppressed.
 

 The State counters that because Ms. Ballenger gave the second deputy permission to seize the crack pipe after he felt it in her pocket, she had consented to its seizure, rendering it constitutional. Consent is one of the few exceptions to the warrant requirement.
 
 V.H. v. State,
 
 903 So.2d 321, 322 (Fla. 2d DCA 2005). “The question of whether a consent is voluntary is a question of fact to be determined from the totality of the circumstances.”
 
 Reynolds,
 
 592 So.2d at 1086. Further, “ ‘the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.’ ”
 
 Id.
 
 (quoting
 
 Florida v. Royer,
 
 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Although the State normally must prove voluntariness of consent only by a preponderance of the evidence, “[w]here there is an illegal detention or other illegal conduct on the part of the police, a consent will be found voluntary only if there is clear and convincing evidence that the consent was not a product of the illegal police action.”
 
 Id.
 
 (citing
 
 Norman v. State,
 
 379 So.2d 643, 647 (Fla.1980)).
 

 In this case, there was no clear and convincing evidence, or even a preponderance, that the consent to either the second search or seizure was voluntary. At the time of the second search, Ms. Ballenger was physically restrained, standing as instructed behind her car while police searched her vehicle. She could neither walk nor drive away and was under the control of the police officers who had handcuffed her and seized her car. Although the Florida Supreme Court has been “reluctant to hold that consent given while handcuffed can-never be voluntary under any circumstances[,] ... [bjecause of the inherently coercive nature of handcuffing, the fact that one is under such restraint at the time consent is given will make the State’s burden to show voluntariness particularly difficult.”
 
 Id.
 
 at 1087. The State failed to produce evidence that satisfies this heightened burden. Ms. Ballenger’s cooperation regarding the crack pipe and the pills in her pocket at the time of the second pat-down constituted a submission
 
 *1026
 
 to authority, not a freely and voluntarily given consent. Consequently, the State’s evidence fell short of proving that the consent was not coerced, and the trial court erred in denying Ms. Ballenger’s motion to suppress.
 

 Reversed and remanded with instructions to discharge Ms. Ballenger.
 

 ALTENBERND and VILLANTI, JJ., Concur.
 

 [1]
 

 . The legality of the search of Ms. Ballenger’s car, while she stood handcuffed outside it, is not at issue in this case.
 
 See Arizona v. Gant,
 
 - U.S. -, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).