RAMIREZ, C.J.
 

 Gladys Hidalgo
 
 [1]
 
 appeals the denial of her motion to suppress cocaine she ostensibly abandoned after she was illegally detained. Because we agree with Hidalgo that she was illegally detained, we reverse.
 

 On March 5, 2006, at approximately 9:30 p.m., Officer Richard Maharaj was on road patrol on route 836. He testified
 
 *96
 
 that he observed a Lincoln Navigator switch lanes causing the driver of another vehicle to slam on the brakes and honk the horn. Officer Carlos Fernandez was behind Officer Maharaj when he activated his emergency lights. The two officers then conducted a traffic stop. Officer Ma-haraj approached the driver while Officer Fernandez went to the passenger side. Roberto Contreras was the driver and Hi-dalgo the front seat passenger. Hidalgo’s twelve year old daughter was in the back seat.
 

 Officer Maharaj testified that he was not aware that a DEA agent had requested the Miami-Dade Police Department to develop probable cause and stop the Navigator. According to Officer Maharaj, while he was in the process of obtaining Contreras’ identification information, Hidalgo tried to answer questions for him and was talking to Contreras in Spanish. This raised a safety concern in Officer Maha-raj’s mind because he did not speak Spanish and did not know what Hidalgo was telling Contreras.
 

 Officer Maharaj then directed his questions towards Hidalgo. Once he began talking to her, he noticed that her voice changed, she slurred, and she became nervous. When asked what the problem was, she responded that “cops make her nervous” because she had previously been arrested for drugs. Officer Maharaj then asked Contreras and Hidalgo: “Do you have a problem if we look into the vehicle?” She said no. He then asked the driver: “Do you have a problem if we look into the vehicle?” He also said no.
 

 At this point, Officer Fernandez asked Hidalgo to get out of the car, patted her down and handcuffed her. A more intrusive search of Hidalgo was later conducted by a female sergeant when she arrived. Hidalgo was taken to Officer Fernandez’s police vehicle, sat in the back and the door was closed. Officer Fernandez admitted that Hidalgo was not free to leave.
 

 Contreras was also handcuffed and placed in the back of Officer Maharaj’s vehicle. Hidalgo’s daughter was allowed to remain in the Navigator while the officers conducted part of their search, but when other officers arrived at the scene, she too was removed from the car and placed in another police vehicle. During the next 15 to 25 minutes, the officers searched the Navigator. At one point, a canine unit arrived at the scene, as well as DEA Special Agent DeLeo.
 

 The officers did not find any contraband in the Navigator. They then removed the handcuffs from Contreras and Hidalgo. Contreras was issued a citation and allowed to leave. When Officer Fernandez checked the back seat of his police vehicle, he found a plastic bag containing cocaine. The officers then drove after the Navigator and arrested Hidalgo. The trial court denied Hidalgo’s motion to suppress, relying primarily on
 
 State v. Cromatie,
 
 668 So.2d 1075 (Fla. 2d DCA 1996).
 

 Review of a motion to suppress is a mixed question of law and fact. The standard of review applicable to the factual findings is whether competent substantial evidence supports those findings. The standard of review applicable to the trial court’s application of the law to the factual findings is de novo.
 
 Johnson v. State,
 
 995 So.2d 1011, 1013 (Fla. 1st DCA 2008).
 

 We conclude that the trial court properly found that this was a legitimate traffic stop. The court agreed with the State that Hidalgo consented to the search. The United States Supreme Court has held that “[wjhen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.”
 
 Bumper v. North Carolina,
 
 
 *97
 
 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797, (1968);
 
 see also Davis v. State,
 
 594 So.2d 264, 266 (Fla.1992) (stating voluntary consent is a prerequisite for a proper constitutional search). The only evidence of consent is the testimony of Officer Maharaj asking the two adult occupants if they had “a problem if we look into the vehicle?” We will assume that this question and answer was sufficient for the trial court to find that the traffic stop was properly extended by consent of the two occupants. The problem with the trial court’s analysis is that no contraband was discovered as a result of the search of the vehicle. Assuming that the consent extended to a search of the persons, this too yielded no contraband.
 

 The State argues that the contraband was discovered as a result of abandonment after Hidalgo was handcuffed and placed in the back of a police vehicle for almost thirty minutes, while she was separated from her daughter and the driver of the car, Contreras. The State introduced no evidence that Hidalgo consented to being handcuffed and placed by herself in the back of a police vehicle for a lengthy period of time. Even if we were to assume that “not having a problem” with a search of the Navigator extended to Hidalgo’s temporary detention, as the court stated in
 
 Johnson, supra,
 
 “it would be unreasonable to assume consent continues indefinitely, no matter what action law enforcement takes.” 995 So.2d at 1014. Unlike in
 
 Cro-matie,
 
 where the two occupants exited the vehicle and stood nearby with back-up officers, Hidalgo was treated no differently than someone under arrest. In fact, Officer Fernandez candidly admitted that Hi-dalgo was not free to leave.
 

 The
 
 Cromatie
 
 case relied on
 
 Michigan v. Summers,
 
 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) for three identifiable law enforcement interests justifying limited detention of occupants during search of premises pursuant to valid search warrant: (1) preventing flight in event incriminating evidence found; (2) minimizing risk of harm both to officers and occupants; and (3) orderly completion of search. In our case, the danger of flight at 9:30 p.m. in the middle of a busy highway like route 836 is ludicrous. But all three interests could have been achieved as in
 
 Cromatie
 
 by having the occupants stand nearby with back-up officers. We know that in addition to Officer Fernandez and Maharaj, two sergeants, a canine unit and a DEA Special Agent were on the scene.
 

 The State attempts to justify the use of handcuffs by citing
 
 Reynolds v. State,
 
 592 So.2d 1082 (Fla.1992), which stated:
 

 The United States Supreme Court has refused to apply a bright-line test for determining what police action is permissible in an investigatory stop. Rather, each case tons on its particular facts. The appropriate question in each case is whether the action was reasonable under the circumstances. This requires a twofold inquiry — whether the action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Courts have generally upheld the use of handcuffs in the context of a Terry stop where it was reasonably necessary to protect the officers’ safety or to thwart a suspect’s attempt to flee.
 

 We do not suggest that police may routinely handcuff suspects in order to conduct an investigative stop. Whether such action is appropriate depends on whether it is a reasonable response to the demands of the situation. When such restraint is used in the course of an investigative detention, it must be temporary and last no longer than necessary to effectuate the purpose of the
 
 *98
 
 stop. The methods employed must be the least intrusive means reasonably available to verify or dispel in a short period of time the officers’ suspicions that the suspect may be armed and dangerous .... Absent other threatening circumstances, once the pat-down reveals the absence of weapons the handcuffs should be removed.
 

 Id.
 
 at 1084-85 (citations omitted) (emphasis added).
 

 Thus, we conclude that the trial court failed to analyze the legality of Hidalgo’s seizure, which allegedly resulted in the abandonment of the cocaine. We hold that a valid consent to search a vehicle does not authorize law enforcement officers to order the occupants out of the vehicle and place them in handcuffs for a lengthy period of time in the back of a police vehicle.
 

 Reversed and remanded.
 

 [1]
 

 . Appellant’s name is interchangeably spelled Hidalgo and Hidelgo. We will use Hidalgo.