85 So.3d 566 (2012)
K.S., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D11-345.
District Court of Appeal of Florida, Fourth District.
April 18, 2012.
*568 Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.
Pamela Jo Bondi, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
MAY, C.J.
After pleading to carrying a concealed weapon, possession of less than twenty grams of cannabis, and possession of paraphernalia, a juvenile appeals an order denying her motion to suppress. She argues the trial court erred in denying her motion because law enforcement lacked reasonable suspicion for the stop and could not provide articulable facts to support probable cause for the pat-down. We agree with the second argument and reverse.
At the motion to suppress hearing, a female officer testified that around 1:46 a.m. she noticed a parked car running with the headlights on, but the tag light off. The officer acknowledged that a disabled tag light is a nonmoving violation. The car was parked in a lot near a closed business.
The officer turned on her emergency lights and spotlight, and conducted a traffic stop. She approached from the driver's side and saw occupants in the car with the windows down. Her male backup officer approached from the passenger's side.
The female officer saw the juvenile "in the front seat passenger rummaging through the floorboard/center console area moving her shoulders about." Because she couldn't see what the juvenile was doing, she asked her to put her hands up. She then asked the juvenile to exit the vehicle.
The female officer conducted a pat-down search for weapons, during which she found an unidentifiable hard, round object in the juvenile's left hip area. The officer explained, "[i]t could've possibly been some sort of weapon, either a knife, taser, or small gun." When the officer asked the juvenile what the object was, she responded that it was her "weed grinder."
The officer took the object out, and performed a Valtox test, which showed positive for cannabis. She placed the item into evidence and took the juvenile into custody. The car door remained open. The juvenile's purse was seen in plain view on the floorboard where the juvenile had been reaching. The male backup officer dealt with the purse.
The male officer testified that he saw the juvenile "rummaging through the vehicle toward the floorboard inside a purse and the under areas. [He] gave her two to three verbal commands to stop rummaging andand put her hands up." He testified that:
She would comply, and then two or three seconds later, right back to thethe floorboard area. It got to the point where I informed [the female officer] thatyou knowwe needed to check what was going on. Due to it being a female, [the female officer] and [I] switched positionsI went to the driver side; she went to the passenger sideand she took out the[minor].
The male officer unstrapped the top strap to his gun holster because of what he saw. He searched her purse and found a black bottle that had "`Police Magnum' on it, and it was a pepper spray bottle." The male officer ascertained that it was a concealed weapon because it was inside the purse. He charged the juvenile under section 790.01, Florida Statutes (2010).
The defense called an investigator, who took photographs of the area. He testified there were on businesses in that area; it was strictly residential with a few multi-family *569 structures. There were no parking lots capable of holding sixty cars as the officer had indicated.
The defense argued that the car was not moving on a public road, but was parked in a residential setting. A potential future traffic violation is insufficient to make a traffic stop. Because the underlying traffic stop was illegal, the defense argued the seizure was illegal.
The State responded that the relevant statute requires a tag light to be lit when the headlights are on; it doesn't require the vehicle to be moving. The police had a lawful reason to approach the car and write a citation for the tag light. As a result, the weapons pat-down was warranted. The defense replied that the officers did not articulate facts to provide probable cause that the juvenile had a weapon.
The trial court denied the motion, finding that the officers had the authority to make a brief stop to issue the non-moving citation. They had the right to ask the juvenile to step out of the car for the officers' safety. The trial court explained, "[t]he officer did a pat-down, resembled something round and hard in her waistband.... I think that gave the officer a legal authority for her safety to remove it. But I think it would've been discovered inevitably."
On appeal, the juvenile argues the trial court erred in denying her motion to suppress because the evidence failed to establish probable cause that she was armed or posed a threat to officer safety. The State responds that the officers had the lawful authority to conduct a traffic stop, and the juvenile's furtive movements gave them a reasonable belief that she might be armed. This gave the officers the authority to conduct a lawful pat-down of the juvenile, revealing illegal contraband.
We review an order on a motion to suppress under a mixed standard. We are bound by the trial court's findings of fact, but have de novo review of the legal issues. State v. Holland, 76 So.3d 1032, 1034 (Fla. 4th DCA 2011).
"The `Florida Stop and Frisk Law' allows law enforcement officers to detain a person temporarily to ascertain the person's identity and the `circumstances of his presence' when there are reasonable indications `that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state.'" Sutton v. State, 698 So.2d 1321, 1323 (Fla. 2d DCA 1997) (quoting § 901.151(2), Fla. Stat. (1993)).
However, a valid stop ... does not necessarily validate a subsequent pat-down search of the occupants for weapons. The Florida Stop and Frisk Law allows an officer, who has validly stopped an individual, to search the individual only if the officer has probable cause to believe that the individual is armed with a dangerous weapon and poses a threat to the officer or any other person.
Dewberry v. State, 905 So.2d 963, 966 (Fla. 5th DCA 2005) (emphasis added) (citations omitted).
Furtive movements or evasive behavior can be considered in determining whether there is a reasonable belief that someone is armed and dangerous. Brown v. State, 863 So.2d 459, 461 (Fla. 5th DCA 2004).[1] However, "[p]at-down searches performed routinely or for safety purposes only" and without any articulable suspicion *570 "are constitutionally impermissible." D.L.J. v. State, 932 So.2d 1133, 1135 (Fla. 2d DCA 2006). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The touchstone of Fourth Amendment analysis is the reasonableness in all the circumstances of the governmental invasion of a citizen's personal security." Brown, 863 So.2d at 461.
Here, the responding officer pulled up behind a vehicle, and properly sought to issue a traffic violation for an inoperable tag light.[2]See State v. Petion, 992 So.2d 889, 895 (Fla. 2d DCA 2008) ("It is well established that an officer can stop a car for an inoperable tag light...."). After observing the juvenile rummage around the floorboard/center console, law enforcement asked the juvenile to exit the vehicle. We see nothing wrong with this request.
At this point in the encounter, however, there was no reason to believe the juvenile was armed. While the officers testified to the juvenile rummaging around, neither officer testified that they saw a bulge of any type or gave any reason to suspect the juvenile was armed, and the juvenile did nothing suspicious after having exited the vehicle. It was only after the pat-down that the officer felt the object, which did not in fact turn out to be a weapon.
Had the officers not found the "weed grinder" during the pat-down, the juvenile would not have been arrested, and there would have been no reason to go inside the vehicle to search her purse. We therefore reverse and remand the case to the trial court to vacate the disposition order and finding of guilt.
Reversed and Remanded.
GROSS and DAMOORGIAN, JJ., concur.
NOTES
[1] Section 901.151(5) speaks in terms of "probable cause," however, courts have suggested that "probable cause" in this context is akin to "reasonable suspicion" or a "reasonable belief" that the person is armed. See Smith v. State, 925 So.2d 465, 467 (Fla. 4th DCA 2006); State v. Webb, 398 So.2d 820, 824 (Fla.1981).
[2] Section 316.221 governs taillamps in motor vehicles and provides, in relevant part:

(2) Either a taillamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear.... [and] shall be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted.
(3) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation....
§ 316.221(2)-(3), Fla. Stat. (2010).